IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| RACHELLE PRICE and ALICIA ALBRIGHT,<br><br>　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>MIGUEL SUAREZ, in his individual and official capacities; BUD COX, Davis County Sheriff; DAVIS COUNTY on behalf of DAVIS COUNTY JAIL; COMPASS GROUP USA, INC. on behalf of CANTEEN CORRECTIONAL SERVICES; and JOHN AND JANE DOES 1-10,<br><br>　　　　　　　　Defendants. | ORDER AND MEMORANDUM DECISION<br><br><br><br>Case No. 1:09-CV-0051-TC |

Defendants Sheriff Bud Cox and Davis County and Defendant Compass Group USA, Inc., on behalf of Defendant Canteen Correctional Services, (collectively "Defendants") have moved for summary judgment on the claims brought by Plaintiffs Rachelle Price and Alicia Albright under 42 U.S.C. § 1983. Ms. Price and Ms. Albright allege that they were subject to cruel and unusual punishment in violation of the Eighth Amendment because the Defendants knew or should have known that Mr. Suarez posed a substantial risk of serious harm to female inmates but did nothing about it. But, as explained below, the Defendants were not "deliberately indifferent" to that risk of harm. Ms. Price and Ms. Albright also contend that Defendants are

liable, under municipal liability, for their conduct in hiring and training Mr. Suarez. Plaintiffs have not pointed to any evidence that Defendants' training program was deficient, and there was nothing in Mr. Suarez's background that could have led the Defendants to conclude Mr. Suarez was highly likely to inflict sexual assault on female inmates. The court therefore grants summary judgment for Defendants.

## BACKGROUND

In 2007, Ms. Price and Ms. Albright were both serving sentences at the Davis County Jail. While incarcerated at the Davis County Jail (the Jail), Ms. Price and Ms. Albright were sexually assaulted by Miguel Suarez.

Mr. Suarez was an employee of Compass Group USA (Compass) and worked in the Jail under a contract between Compass and the Jail. In 2005, the Jail entered into a contract with Canteen Corporation, a division of Compass, which granted Compass the exclusive right to provide and operate food services for the inmates and staff of the Jail. In return, Compass was responsible for the operation and management of food and commissary services in the Jail. Under the contract, the Jail did not have the authority to hire or fire Compass employees, including Mr. Suarez, but the Sheriff's Office did have the right to deny a Compass employee access to the Jail if there was a security or safety concern.

Before a Compass employee could work inside the Jail, the Jail conducted a background investigation on the employee. The investigation included a polygraph test, a nation-wide criminal background check, contact of references, inspection of the employee's residence, and an in-person interview.

The Jail conducted a background investigation of Mr. Suarez before he was allowed to work inside the Jail. Mr. Suarez passed the polygraph and criminal background portions of the investigation, but the Jail was initially unable to contact Mr. Suarez's references. Although the sergeant who conducted the background investigation of Mr. Suarez initially could not reach any of Mr. Suarez's references, it is undisputed that Sergeant Joseph was later able to contact two references, a former employer and a church friend, and neither said anything negative about Mr. Suarez.

Both the Jail and Compass offered sexual harassment training and policies for all employees. As part of the Prisoner Rape Elimination Act (PREA), all Jail deputies received training on ways to eliminate rape and sexual assault. All officers on duty in 2007 were familiar with the PREA program and were trained to help eliminate prisoner rape and assault. During his employment, Mr. Suarez attended all of Compass's sexual harassment prevention training seminars.

The first time that allegations of sexual harassment or assault were made against Mr. Suarez was August 9, 2007, when Deputy Cano interviewed three inmates after having encountered Mr. Suarez in the women's housing area attempting to speak with inmates. Following this initial encounter with Mr. Suarez, Deputy Cano immediately reported to her supervisors her concerns about Mr. Suarez coming into the women's housing area. Deputy Cano interviewed three inmates other than Ms. Price and Albright, who claimed that Mr. Suarez had sexually harassed them. Deputy Cano reported the possible harassment to her supervisors. As a result, Chief Yeaman told Sheriff Cox who told him to proceed with a formal investigation.

Chief Yeaman also instructed Compass manager, John Rubens, to remove Mr. Suarez from the Jail immediately. Mr. Suarez was escorted out of the Jail and did not return.

Before the allegations of sexual assault made during Deputy Cano's interviews on August 9, 2007, the Jail administration and Compass had no knowledge of any threat of harassment or sexual assault from Mr. Suarez against any Jail inmate. But there had been two instances before August 9, 2007, when Mr. Suarez went to the female work center area (Work Center) to speak with inmates, which was a violation of Jail policy. On one of those occasions, Mr. Suarez had gone into the female Work Center and spoken privately with two inmates in a classroom. Deputy Carter, an employee of the inmate Work Center, saw Mr. Suarez in the classroom with the two inmates and questioned him about why he was there. Mr. Suarez claimed that he was investigating sugar that had been taken from the kitchen and was being passed to male inmates. When Deputy Carter later asked the female inmates what Mr. Suarez was doing there, they told him the same thing. Deputy Carter told Mr. Suarez to leave and reported the incident to Sergeant Joseph.

A few days after this incident, Mr. Suarez again went to the female Work Center. Sergeant Joseph, also an employee of the inmate Work Center, saw Mr. Suarez come into the Work Center and asked him if he needed something. Mr. Suarez said that he needed to speak to two inmates as part of an investigation he was doing. Sergeant Joseph told Mr. Suarez that he needed to talk to Deputy Palmer, the corrections investigator, about any potential investigations. Mr. Suarez left the Work Center and Sergeant Joseph reported the incident to Lieutenant Jensen. Aside from these two instances, there were no other allegations that Mr. Suarez had violated Jail

policies.[1] And before August 9, 2007, Mr. Suarez had never been seen in the women's housing area.

Ms. Price and Ms. Albright brought claims against the Defendants for negligence and violations of 42 U.S.C. § 1983 for cruel and unusual punishment, failure to train and supervise, and improper hiring. In a January 2010 order, the court dismissed the state law negligence claims against Defendants. The court allowed a first phase of discovery, limited to the following topics: the relationship between the Jail and Compass; Ms. Price's and Ms. Albright's interactions with Mr. Suarez and the circumstances that led to those interactions; and any complaints or reports of misconduct regarding Mr. Suarez's behavior.

## STANDARD OF REVIEW

The court grants summary judgment when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." N. Natural Gas Co. v. Nash Oil & Gas, Inc., 526 F.3d 626, 629 (10th Cir. 2008).

## ANALYSIS

Defendants move for summary judgment based on the fact that the first phase of discovery did not reveal any evidence that Defendants were deliberately indifferent to a substantial risk of harm posed by Mr. Suarez. Ms. Price and Ms. Albright argue that because Jail

---

[1] Deputy Carter did testify during his deposition that he had seen Mr. Suarez "communicating with a couple of the females" in the kitchen "[a]nd it seemed pretty friendly." (Carter Dep. 9:19-21 (P.'s Mem. Opp. Summ. J. Ex. 5 at 3).) Deputy Carter noted that Mr. Suarez would have to communicate with female inmates as part of his job and that "it was not . . . anything that [he] could report as being inappropriate . . . ." (Id. at 9:19-24.)

5

personnel had twice seen Mr. Suarez entering the Work Center, Defendants knew or should have known that Mr. Suarez posed a substantial risk of serious harm to female inmates but did nothing about it. Ms. Price and Ms. Albright additionally argue that Defendants are liable for their decision to hire Mr. Suarez because an insufficient background check was done.

**Compass is a State Actor**

Section 1983 applies only to people acting under the color of state law. 42 U.S.C. § 1983. But "[i]f a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, 'that conduct [is] also action under color of state law and will support a suit under § 1983.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting Lugar v. Edmondson Oil Co., 457 U.S. 922, 935 (1982)). "To constitute state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'" West, 487 U.S. at 49 (citations omitted). In order for Compass to be liable under § 1983, it must be a state actor.

In West, the Supreme Court held that a physician who was under contract to provide medical services to inmates at a state prison was a state actor for purposes of § 1983. Id. at 57. Because of the physician's "function within the state system," and not "the precise terms of his employment . . . his actions [could] fairly be attributable to the State." Id. at 55-56. The fact that the State contracted out prison medical care did not "relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it [did] not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." Id. at 56. "The State bore an

affirmative obligation to provide adequate medical care to [its prisoners]; the State delegated that function to [the physician] Atkins; and [the physician] voluntarily assumed that obligation by contract." Id.

Here, the Jail contracted out to Compass the exclusive right to provide and operate food services for the inmates and staff of the Jail. The State, and therefore the Jail, had a constitutional obligation to provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." Ramos v. Lamm, 639 F.2d 559, 570-71 (10th Cir. 1980). The Jail delegated that obligation to Compass, and Compass voluntarily assumed the obligation by contract. Compass's provision of food to the inmates was state action, and Compass therefore acted under of color of state law for purposes of § 1983.

**Eighth Amendment**

Ms. Price and Ms. Albright allege that Defendants are liable under 42 U.S.C. § 1983 for Mr. Suarez's sexual assault because the assaults constitute cruel and unusual punishment under the Eighth Amendment.

"In order to hold prison officials liable for violating an inmate's right to humane conditions of confinement, two requirements must be met." Barney v. Pulsipher, 143 F.3d 1299, 1310 (10th Cir. 1998). First, "the deprivation alleged must be objectively 'sufficiently serious,' . . . depriving the inmate of 'the minimal civilized measure of life's necessities." Id. (citations omitted). Second, the official must exhibit "'deliberate indifference' to a substantial risk of serious harm to an inmate. Id. The deliberate indifference standard in a prison-conditions case is

a "subjective" one and not an "objective" one; a prison official "is liable if the 'official knows of and disregards an excessive risk to inmate health and safety.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. "It is not enough to establish that the official should have known of the risk of harm." Pulsipher, 143 F.3d at 1310.

Here, there is no evidence that Defendants knew that Mr. Suarez posed an excessive risk to the safety of Ms. Price and Ms. Albright, or to inmates generally. Ms. Price and Ms. Albright point to the two earlier instances when Mr. Suarez entered the Work Center and spoke to, or attempted to speak to, female inmates. This evidence is not sufficient to show Defendants knew that Mr. Suarez posed a risk. And once Defendants actually became aware of the allegations of sexual harassment against Mr. Suarez, they took immediate action and removed him from the Jail.

Because Plaintiffs have not demonstrated that the Defendants were deliberately indifferent, the court GRANTS Defendants' motions for summary judgment on the Eighth Amendment claims.

**Municipal Liability**

A municipality may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal polices, and not for the tortious acts of its employees. Pulsipher, 143 F.3d at 1307 (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). A plaintiff must show that "the municipal action was taken with the requisite degree of culpability and must

8

demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Pulsipher, 143 F.3d at 1307 (quoting Bd. of County Comm'rs v. Brown, 520 U.S. 397, 404 (1997)). When the policy at issue is lawful on its face, and the municipality has not directly inflicted the injury through its own actions, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employees." Pulsipher, 143 F.3d at 1307 (quoting Brown, 520 U.S. at 405).

Here, Ms. Price and Ms. Albright do not contend that Defendants maintained an official policy of sexually harassing female inmates. Nor do they contend that Defendants authorized Mr. Suarez's sexual assaults. Rather, Ms. Price and Ms. Albright claim that the Defendants are liable for their conduct in hiring and training Mr. Suarez. Accordingly, "rigorous standards of culpability and causation must be applied." Brown, 520 U.S. at 405.

**Failure to Train and Supervise**

Ms. Price and Ms. Albright claim that Defendants are liable under 42 U.S.C. § 1983 based on a policy of inadequate training.

Municipal liability based on a policy of inadequate training requires proof of the municipality's "deliberate indifference"; "the failure to train must 'reflect [ ] a 'deliberate' or 'conscious' choice by a municipality." Pulsipher, 143 F.3d at 1307 (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989)). The deliberate indifference standard is satisfied when "the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." Pulsipher, 143 F.3d at 1307. Generally, a pattern of tortious conduct,

or unconstitutional behavior, establishes notice. Id. But in a "narrow range of circumstances," deliberate indifference may be found absent such a pattern if "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction . . . ." Id. at 1307-08 (citing Brown, 520 U.S. at 409).

Ms. Price and Ms. Albright have failed to point to any evidence tending to show that Defendants were deliberately indifferent. Before August 9, 2007, Defendants had no knowledge of any sexual harassment or assault allegations against Mr. Suarez. Defendants were similarly unaware of any other instances or allegations of sexual assault against Jail inmates. Consequently, no pattern of violations[2] existed to put Defendants on notice that their training program was deficient.

This case does not fall within the "narrow range of circumstances" justifying a finding of deliberate indifference absent a pattern of unconstitutional behavior. During his employment, Mr. Suarez attended all of Compass's sexual harassment prevention training seminars. Ms. Price and Ms. Albright have not provided any evidence that Compass's sexual harassment training was deficient in any way.

Because there was no pattern of unconstitutional behavior to put Defendants on notice that their training program was deficient, the court GRANTS Defendants' motions for summary judgment on the inadequate training claims.

---

[2]In order to establish a pattern of tortious or unconstitutional behavior, Ms. Price and Ms. Albright point to the two instances when Mr. Suarez went to the female Work Center in violation of Jail policies. Although it was violation of Jail policy for Mr. Suarez to enter the female Work Center, these two instances do not constitute a pattern of unconstitutional behavior that would have given Defendants notice that their sexual harassment training program was deficient.

10

**Improper Hiring**

Ms. Price and Ms. Albright claim that Defendants are liable under 42 U.S.C. § 1983 based on their decision to hire Mr. Suarez.[3]

Because municipal liability based on "an official's failure to carefully scrutinize an application for employment poses the 'greatest risk' that a municipality will be held liable for the actions of its employees . . . courts must take even greater care to adhere to stringent culpability and causation standards . . . ." Pulsipher, 143 F.3d at 1308 (citing Brown, 520 U.S. at 415, 425). "Culpability requires a strong connection between the background of the particular applicant and the specific constitutional violation alleged"; liability therefore requires a finding that "this officer was highly likely to inflict the particular injury suffered by the plaintiff." Pulsipher, 143 F.3d at 1308 (quoting Brown, 520 U.S. at 412). It is not enough to show that an official engaged in "less than careful scrutiny of an applicant resulting in a generalized risk of harm." Pulsipher, 143 F.3d at 1308.

Before Mr. Suarez was given access to work in the Jail as an employee of Compass, the Jail conducted a background investigation of Mr. Suarez.[4] Background investigations conducted by the Jail include a polygraph examination, a national criminal background check, a driver's license check, and contact with two or more references provided by the prospective worker.

---

[3] Although the Jail did not hire Mr. Suarez, it did allow him to work inside the Jail as an employee of Compass. This decision is considered in the discussion of the improper hiring claim against the Jail and Sheriff Cox.

[4] Compass did not conduct its own investigation of Mr. Suarez before hiring him. But the relevant employment in this case is Mr. Suarez's employment, through Compass, inside the jail. Because the Jail did a background investigation of Mr. Suarez before allowing him to work inside the Jail, Compass had no need to do the same investigation. Therefore the Jail's background investigation is considered in the discussion of the improper hiring claims against both the Jail and Compass.

The background investigation of Mr. Suarez did not reveal any reason to believe that Mr. Suarez would pose a risk of sexual harassment or assault. Mr. Suarez passed the polygraph test, and the criminal background check did not reveal any significant criminal history. Although Sergeant Joseph, who conducted the background investigation, was initially unable to contact any of Mr. Suarez's listed references, further attempts resulted in two contacts: Sergeant Joseph spoke with a church friend of Mr. Suarez, who admittedly knew his wife better than Mr. Suarez, and a former employer. Neither had anything negative to say about Mr. Suarez. Nothing in the background check conducted by the Jail indicated that Mr. Suarez was "highly likely to inflict the <u>particular</u> injury" suffered by Ms. Price and Ms. Albright. <u>Pulsipher</u>, 143 F.3d at 1308 (quoting <u>Brown</u>, 520 U.S. at 412).

Although the background investigation might have been incomplete,[5] this is not enough to meet the rigorous requirements of deliberate indifference. <u>Pulsipher</u>, 143 F.3d at 1308. Ms. Price and Ms. Albright have not presented any evidence that Mr. Suarez's background could have led Defendants to conclude that Mr. Suarez was highly likely to inflict sexual assault on female inmates. The court therefore GRANTS Defendants' motions for summary judgment on the improper hiring claims.

## CONCLUSION

The court GRANTS Defendants' motions for summary judgment (Dkt. Nos. 39 and 42) as to each of Ms. Price's and Ms. Albright's claims.

---

[5]In her summary of Mr. Suarez's background investigation, Sergeant Joseph indicated that there was not enough information to conduct a suitable background check. This report was written before Sergeant Joseph's contact with Mr. Suarez's church friend and former employer.

DATED this 11th day of February, 2011.

                BY THE COURT:

                _____
                TENA CAMPBELL
                United States District Judge